# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>                      Plaintiff,<br>v.<br><br>CHARLES RICHARDS,<br><br>                      Defendant. | Civil No. 17-3603 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Beth A. Jenson Prouty, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A.**, 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, for plaintiff.

Matthew James Barber, **SCHWEBEL, GOETZ & SIEBEN**, 80 South Eighth Street, Suite 5120, Minneapolis, MN 55402, for defendant.

Defendant Charles Richards was injured in a motorcycle accident. Richards seeks compensation under his auto-insurance policy with Plaintiff Employers Mutual Casualty Company ("EMC"), specifically under the Uninsured/Underinsured Motorist ("UIM") Endorsement to his policy. EMC brought this action, seeking a declaration that it is not liable under its policy with Richards because an owned-vehicle exclusion in the UIM Endorsement precludes Richards from receiving the UIM benefits he seeks. The parties have filed cross-motions for summary judgment. Because the Court will conclude that Richards is not eligible for these benefits under the UIM Endorsement, the Court will

1

deny Richards's motion for summary judgment, grant EMC's motion for summary judgment, and enter judgment for EMC.

## BACKGROUND

Charles Richards owned three motor vehicles that he insured through EMC. (Compl. ¶ 13, Aug. 7, 2017, Docket No. 1; Answer ¶ 9, Oct. 3, 2017, Docket No. 8; *see* Compl. ¶ 12, Ex. B ("Auto Policy") at 1-2.) The policy specifically lists: a 1994 Honda, a 2002 Chevrolet, and a 2014 Honda. (Compl. ¶ 13; Answer ¶ 9.) Richards also owned a motorcycle, which he insured through a Progressive policy providing liability coverage but not UIM coverage. (Compl. ¶¶ 2, 9, 14; Answer ¶¶ 3, 5, 10; *see also* Compl. ¶ 9, Ex. A.)

On September 11, 2016, Richards was injured in a motor-vehicle accident while operating his motorcycle. (Compl. ¶¶ 2, 10; Answer ¶¶ 3, 6.) Richards recovered $50,000 from the at-fault driver – the liability limit under the at-fault driver's insurance policy – but this amount failed to cover all the costs of Richards's injuries. (Compl. ¶ 11; Answer ¶¶ 7, 35, 36.) Because Richards's Progressive motorcycle insurance did not include UIM coverage, he filed a claim with EMC, seeking compensation under the UIM Endorsement to his auto policy. (*See* Compl. ¶¶ 2, 16; Answer ¶¶ 3, 12.)

Richards's UIM coverage is designed to cover Richards if he is injured by an uninsured motorist or if the cost of his injuries exceeds the limits of another, at-fault motorist's coverage. (*See* Compl. ¶ 12; Answer ¶ 8; Auto Policy at 29-32 ("UIM Endorsement").) Richards's UIM coverage contains an owned-vehicle exclusion, which

2

excludes coverage "for 'bodily injury' sustained by any 'insured': (1) While 'occupying' any motor vehicle owned by that 'insured' which is not insured for this coverage." (Auto Policy at 30.) This case involves the application of this exclusion to the UIM coverage.

Richards claims that, as a result of the injuries he sustained during the September 2016 motorcycle crash, he is entitled to UIM benefits under his policy with EMC. EMC contends that the UIM Endorsement excludes coverage because Richards was occupying a motor vehicle that he owned but did not insure under his policy with EMC. EMC brought this declaratory-judgment action, seeking a declaration that it is not required to pay Richards's claim under the UIM Endorsement.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The interpretation of an insurance policy . . . is

one of law" that is properly decided in a motion for summary judgment. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quoting *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996)).

II.     **PRINCIPLES OF INSURANCE POLICY INTERPRETATION**

When interpreting an insurance policy under Minnesota law, "general principles of contract interpretation apply." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). The Court must construe the terms of a policy "according to what a reasonable person in the position of the insured would have understood the words to mean." *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977). Accordingly, where words and phrases in a policy are unambiguous, the Court will interpret these terms using their plain and ordinary meaning. *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012).

"Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations." *Wolters*, 831 N.W.2d at 636. If language in a policy is ambiguous, the ambiguity must be resolved in favor of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn. 1979). "The reviewing court may not, however, read an ambiguity into the plain language of an insurance contract." *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989).

III.    **CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This case concerns the interpretation of the owned-vehicle exclusion in the UIM Endorsement to Richards's auto policy with EMC. That exclusion reads:

> We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured" . . . [w]hile "occupying" any motor vehicle owned by that "insured" which is not insured for this coverage.

(Auto Policy at 30.) The parties do not dispute that Richards is an "insured" (*see* Auto Policy at 3, 9); that Richards was "occupying" his motorcycle when he was injured (*id.* at 9); that Richards owned his motorcycle when he was injured (Compl. ¶ 2; Answer ¶ 3); and that Richards's motorcycle was not insured under his EMC policy (Compl. ¶¶ 2, 9, 14; Answer ¶¶ 3, 5, 10; *see also* Compl. ¶ 9, Ex. A.). The term "motor vehicle" is undefined in both the main policy form and the UIM Endorsement, and undefined terms in an insurance contract are normally given their plain and ordinary meaning. *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn. 1984). The parties agree that the plain and ordinary meaning of "motor vehicle" includes motorcycles. (Compl. ¶ 24; Answer ¶ 20.) Thus, interpreting the owned-vehicle exclusion according to its plain language supports a finding that Richards's UIM coverage does not apply to the injuries he sustained during the September 2016 motorcycle crash.

Richards notes, however, that in a separate endorsement – the Personal Injury Protection ("PIP") Endorsement – motorcycles are expressly excluded from the definition of "motor vehicle." The PIP Endorsement, "in accordance with the Minnesota No-Fault Automobile Insurance Act," requires EMC to pay for bodily injuries caused by "[a]n accident arising out of the maintenance or use of a 'motor vehicle'" or "[b]eing struck by a motorcycle." (Auto Policy at 34.) Richards argues that the definition of "motor vehicle" in the PIP Endorsement should also apply to the main policy form and UIM

5

Endorsement, thereby requiring EMC to compensate him for the injuries he sustained during the motorcycle accident.

For five reasons, the Court concludes that the term "motor vehicle" in the UIM Endorsement includes motorcycles – consistent with its plain and ordinary meaning – and therefore that UIM coverage does not extend to Richards's September 2016 motorcycle accident.

First, the PIP Endorsement, consistent with its purpose of complying with the Minnesota no-fault statute, contains an identical definition of "motor vehicle" as used in the statute. (*Compare* Auto Policy at 34 ("The following definition is added: . . . 'motor vehicle' does not include: . . . [a] motorcycle; or . . . [a]ny vehicle with fewer than four wheels."), *with* Minn. Stat. § 65B.43 subd. 2 ("'Motor vehicle' means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels . . .").) Other terms defined in the PIP Endorsement also track comparable statutory definitions. (*Compare* Auto Policy at 34 (defining "occupying," "family member," and "insured"), *with* Minn. Stat. § 65B.43 subds. 3, 5 (defining "maintenance or use of a motor vehicle" and "insured").) This strongly suggests that the definition of "motor vehicle" in the PIP Endorsement was meant to apply only to the PIP Endorsement.

Second, the PIP Endorsement does not expressly modify the main policy form or the UIM Endorsement. "[P]rovisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy." *EMCASCO Ins. Co. v. Diedrich*, 394 F.3d 1091, 1096 (8th Cir. 2005) (quoting

Endorsement, thereby requiring EMC to compensate him for the injuries he sustained during the motorcycle accident.

For five reasons, the Court concludes that the term "motor vehicle" in the UIM Endorsement includes motorcycles – consistent with its plain and ordinary meaning – and therefore that UIM coverage does not extend to Richards's September 2016 motorcycle accident.

First, the PIP Endorsement, consistent with its purpose of complying with the Minnesota no-fault statute, contains an identical definition of "motor vehicle" as used in the statute. (*Compare* Auto Policy at 34 ("The following definition is added: . . . 'motor vehicle' does not include: . . . [a] motorcycle; or . . . [a]ny vehicle with fewer than four wheels."), *with* Minn. Stat. § 65B.43 subd. 2 ("'Motor vehicle' means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels . . .").) Other terms defined in the PIP Endorsement also track comparable statutory definitions. (*Compare* Auto Policy at 34 (defining "occupying," "family member," and "insured"), *with* Minn. Stat. § 65B.43 subds. 3, 5 (defining "maintenance or use of a motor vehicle" and "insured").) This strongly suggests that the definition of "motor vehicle" in the PIP Endorsement was meant to apply only to the PIP Endorsement.

Second, the PIP Endorsement does not expressly modify the main policy form or the UIM Endorsement. "[P]rovisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy." *EMCASCO Ins. Co. v. Diedrich*, 394 F.3d 1091, 1096 (8th Cir. 2005) (quoting

*Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.*, 478 N.W.2d 824, 827 (S.D. 1991)). Applying this rule here, if the PIP Endorsement definitions were meant to alter the main policy form, the Endorsement should say so expressly.

*Frauendorfer v. Meridian Security Insurance Co.*, No. A16-0818, 2017 WL 1316110 (Minn. App. Apr. 10, 2017), provides a helpful contrast. There, the court held that "motor vehicle" did not include motorcycles because the PIP endorsement in that case expressly amended the definitions section of the main policy form, stating, "The Definitions Section is amended as follows." *Id.* at *1. In Richards's policy, however, the PIP Endorsement does not expressly modify the main policy form or the UIM Endorsement. Unlike the PIP Endorsement in *Frauendorfer*, the PIP Endorsement here includes a Definitions section prefaced merely by the word "Definitions." (Auto Policy at 34.) Without express language that the Definitions section in the PIP Endorsement is meant to modify the rest of the policy, one is left with the conclusion that the Definitions section in the PIP Endorsement applies only to the PIP Endorsement.

Third, a different endorsement in Richards's policy further supports this interpretation. In an earlier-appearing endorsement in Richards's policy – the "Amendment of Policy Provisions - Minnesota" ("Amendments") – the definitions section is introduced by the same phrase used in *Frauendorfer*: "The Definitions section is amended as follows." (*Id*. at 22.) Conversely, the PIP Endorsement merely says "Definitions." (*Id*. at 34.) The purpose of the introductory phrase "The Definitions section is amended as follows" is to give the insured notice that the Amendments change the Definitions of the entire main policy form. *See Frauendorfer*, 2017 WL 1316110, at

7

*1. Had EMC and Richards intended the PIP Endorsement to amend the main policy form definitions, presumably they could have done so by using the same language used in the Amendments. Because this language is not used in the PIP Endorsement, the logical inference is that the definitions in the Amendments apply throughout the main policy form and that the definitions in the PIP Endorsement do not. To interpret the policy otherwise would create ambiguity and confusion where none exist. *See Columbia Heights Motors, Inc.*, 275 N.W.2d at 36.

Fourth, nothing in the PIP Endorsement gives the impression that a reasonable person in the insured's position would understand the main policy form to incorporate the PIP Endorsement's definition of "motor vehicle." Rather, a reasonable person would understand that it is the PIP Endorsement that incorporates the main policy form – not the other way around as Richards suggests. The PIP Endorsement begins by stating, "With respect to coverage provided by this endorsement, the provisions of the [Main] Policy apply unless modified by the endorsement." (Auto Policy at 33.) To hold that the main policy form incorporates a definition in the PIP Endorsement would conflict with the structure of the relationship between the main policy form and the PIP Endorsement that a reasonable person in the insured's position would understand. *See* 2-5 Appleman on Insurance Law & Practice Archive § 5.1 (2d 2011) ("Where the endorsement expressly provides that it is subject to all terms, limitations, and conditions of the policy, it does not abrogate or nullify any provision of the policy unless it is so stated in the endorsement.").

Finally, if the Court were to find that the definitions section in the PIP Endorsement defined "motor vehicle" throughout the entire policy, ambiguity would be

created with respect to the term "family member," which both the Amendments and the PIP Endorsement purport to redefine. (*Compare* Auto Policy at 34, *with id.* at 9.) The more reasonable and ambiguity-free interpretation is that the definitions in the PIP Endorsement apply for purposes of PIP coverage and do not apply to the main policy form.

The Court is mindful that an insurer must prove that an exclusion applies and that ambiguities are resolved in favor of coverage. But here, the owned-vehicle exclusion in the UIM Endorsement to Richards's auto policy with EMC is clear and unambiguous: the term "motor vehicle" includes motorcycles, consistent with its plain and ordinary meaning. EMC has carried its burden to show that the owned-vehicle exclusion applies. Richards is therefore not entitled to UIM coverage for injuries sustained in his September 2016 motorcycle accident.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Richards's Motion for Summary Judgment [Docket No. 20] is **DENIED** and Employers Mutual Casualty Company's Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 3, 2018          _____s/John R. Tunheim_____
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
         Chief Judge
         United States District Court